ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

CHENEGA MANAGEMENT, L.L.C.,

Plaintiff,

v.

THE UNITED STATES OF AMERICA,

Defendant.

03-2789C

No. ____________

FILED
DEC - 8 2003
U.S. COURT OF FEDERAL CLAIMS

**COMPLAINT**

Nature of the Case

1. This case concerns Plaintiff's entitlement to compensation for major painting projects in excess of 200 square feet performed during the maintenance of military housing facilities at Holloman Air Force Base in New Mexico. Through this complaint, Plaintiff seeks (a) entry of judgment in its favor in the amount of $308,634.81 for major painting performed between May 2001 through October 2002; (b) an order directing that Plaintiff be compensated for painting projects in excess of 200 square feet performed between October 2002 and the present; (c) prejudgment interest on amounts found to be owing; and (d) costs and attorneys' fees incurred in bringing this action.

Parties

2. Plaintiff Chenega Management, LLC ("Chenega") is a limited liability company organized and existing under the laws of the State of Alaska, with its principal office and place of business located at Anchorage, Alaska. Chenega provides construction, maintenance and housing support services for private and governmental clients.

BIRCH, HORTON, BITTNER AND CHEROT
ATTORNEYS AT LAW
1127 WEST SEVENTH AVENUE
ANCHORAGE, ALASKA 99501-3399
TELEPHONE (907) 276-1550 • FACSIMILE (907) 276-3680



F:\505845\10\TKM0013.DOC

BIRCH, HORTON, BITTNER AND CHEROT
ATTORNEYS AT LAW
1127 WEST SEVENTH AVENUE
ANCHORAGE, ALASKA 99501-3399
TELEPHONE (907) 276-1550 • FACSIMILE (907) 276-3680

3. With regard to the contract at issue in this matter, Defendant United States acted through the United States Air Force, 49th Contracting Squadron, Holloman Air Force Base.

Jurisdiction and Venue

4. Chenega's claim against the United States is founded on an express contract, and jurisdiction rests with this Court pursuant to 28 U.S.C. §§ 1346(a) and 1491(a)(1), and 41 U.S.C. § 609(a)(1).

The Contract

5. On 1 April 2001, the United States Air Force ("USAF"), acting through the 49th Contracting Squadron, Holloman Air Force Base ("Holloman AFB"), awarded Contract No. F2965001-C0011 (the "Contract") to Chenega for housing management and maintenance services at Holloman AFB for the period between 1 May 2001 and 30 September 2001, with four option years. The stated value of the contract was $19,584,624.34.

6. Under the terms of the Contract, Chenega is obligated to provide Change of Occupancy Maintenance ("COM") at a flat per unit rate of $1,126.22 for the initial contract period, with this rate increasing to $1,198.94 during the four option years. Under § 2.1.5 of the Performance Work Statement ("PWS") incorporated into the Contract, COM is defined as "the work accomplished to inspect, repair, maintain, clean and service any of the military family housing units and their appurtenances, which are vacant." Chenega is required to complete COM within one to seven days of unit turnover, depending on the level of maintenance required.

7. The Contract contains a separate Line Item Number for "major paint" work performed by Chenega. Under § 2.1.23.1 of the PWS, "major paint" is defined as the "interior or exterior painting of an area greater than 200 square feet per unit."

BIRCH, HORTON, BITTNER AND CHEROT
ATTORNEYS AT LAW
1127 WEST SEVENTH AVENUE
ANCHORAGE, ALASKA 99501-3399
TELEPHONE (907) 276-1550 • FACSIMILE (907) 276-3680

As originally negotiated, the contract called for Chenega to be compensated at the rate of $.84 per square foot for major painting; Chenega later agreed to a contract modification that reduced this rate to $.26 per square foot.

8. Under § 5.7.8 of the PWS, spot painting of less than 200 square feet during COM is considered "normal work required in conjunction with maintenance efforts" for which Chenega is not entitled to additional compensation. This section further provides that Chenega will receive additional compensation for major painting of more than 200 square feet performed during COM.

9. Under the Contract, the work performed by Chenega during COM is subject to quality control inspections performed by USAF civilian personnel. The amount and quality of the painting work performed by Chenega during COM must meet the standards established through these inspections.

Dispute Giving Rise to the Complaint

10. On 5 June 2001, the USAF issued a "unilateral modification" to the Contract that altered § 5.7.8 of the PWS to eliminate Chenega's entitlement to compensation for painting work accomplished during COM, regardless of the square footage involved. Chenega expressly rejected that modification.

11. On 2 July 2001, Chenega submitted an invoice that sought compensation for major painting that it had performed during COM. The USAF rejected the "major paint" portion of that invoice, and requested that Chenega agree to a modification of the contract that would eliminate Chenega's entitlement to compensation for painting performed during COM, regardless of the square footage involved. Chenega did not agree to the proposed modification.

12. Chenega attempted to resolve this dispute through negotiations with the Contracting Officer during 2001 and 2002. When these negotiations proved

BIRCH, HORTON, BITTNER AND CHEROT
ATTORNEYS AT LAW
1127 WEST SEVENTH AVENUE
ANCHORAGE, ALASKA 99501-3399
TELEPHONE (907) 276-1550 • FACSIMILE (907) 276-3680

unsuccessful, Chenega submitted a claim to the Contracting Officer on December 31, 2002 that requested $308,634.81 of additional compensation for major painting performed by Chenega between May 2001 and October 2002.

13. The Contracting Officer denied Chenega's claim in a decision dated 12 August 2003. A copy of this decision is attached hereto as "Exhibit 1."

14. For the time period between October 2002 and the present, Chenega has continued to perform major painting during COM in order to meet USAF inspection standards. Chenega continues to invoice the USAF for compensation that Chenega believes is due and owing under the Contract. The USAF has consistently rejected these requests for compensation.

15. Under the plain, unambiguous terms of the Contract, Chenega is entitled to compensation at the rate of $.26 per square foot for all major painting that it performs, regardless of whether this work occurs during COM.

16. The "unilateral modification" that the USAF attempted to impose on 5 June 2001 is invalid since Chenega expressly rejected it. Chenega has maintained its claim of entitlement for additional compensation by continuously submitting invoices to the USAF for major painting performed during COM.

<u>Requested Relief</u>

17. Based upon the foregoing, Chenega prays for the following relief:

(a) For entry of judgment against the United States in the amount of $308,634.81 for major painting performed by Chenega pursuant to the terms of the Contract between May 2001 and October 2002;

(b) For entry of an order that invalidates the unilateral change to the Contract that the USAF attempted to impose on 5 June 2001, and that directs the

USAF to compensate Chenega for major painting performed during COM work at the agreed upon rate of $.26 per square foot;

(c) For an award of costs, prejudgment interest and attorneys' fees as allowed by law.

DATED this 5th day of December, 2003.

BIRCH, HORTON, BITTNER AND CHEROT
Attorneys for Plaintiff

By: [signature]

Max D. Garner
1127 W. Seventh Avenue
Anchorage, AK 99501
(907) 276-1550
Facsimile: (907) 276-3680

BIRCH, HORTON, BITTNER AND CHEROT
ATTORNEYS AT LAW
1127 WEST SEVENTH AVENUE
ANCHORAGE, ALASKA 99501-3399
TELEPHONE (907) 276-1550 • FACSIMILE (907) 276-3680

# DEPARTMENT OF THE AIR FORCE
49TH CONTRACTING SQUADRON (ACC)
HOLLOMAN AIR FORCE BASE, NEW MEXICO

MEMORANDUM FOR CHENEGA MANAGEMENT, LLC 12 AUG 2003
ATTN: LEONARD KAROR
726 EAST 9th AVENUE
ANCHORAGE, AK 99501

FROM: 49th CONTRACTING SQUADRON
1210 FORTY NINER AVENUE
HOLLOMAN AFB, NM 88330-7908

SUBJECT: CONTRACT F29651-01-C0011, DETERMINATION CONCERNING "REQUEST FOR EQUITABLE ADJUSTMENT" AND FINAL DECISION FOR MAJOR PAINT

1. Reference your issues concerning major paint arising from the execution of this contract and correspondence dated as follows:

a. Chenega's letter, Notification of Changed Conditions; Contract F29651-01-C-0011, dated December 31, 2002

b. The Government's response dated February 04, 2003

c. Chenega's letter, Notification of Changed Conditions; Contract F29651-01-C-0011, dated February 28, 2003.

2. I have thoroughly reviewed your request for equitable adjustment concerning Major Paint, and your request for equitable adjustment for the above letters is denied based on the following:

a. On 3 January 2003, the Contracting Squadron received Chenega Management's (hereinafter "Chenega") letter dated 31 December 2002 requesting an equitable adjustment in the amount of $308,634.81 for the painting of 1,602,765 square feet during Change of Occupancy Maintenance (hereinafter "COM"). Chenega invoiced the Government for the 1,602,765 square feet of painting under the Major Paint Contract Line Item Numbers (hereinafter "CLIN"), 0002AP and 1002AP, but in its letter Chenega states that the Government refused to pay these invoices from May 2001 to October 2002. Chenega calculated the $308,634.81 by multiplying the Major Paint CLINs' unit price per square foot of $0.26 times the 1,602,765 square feet of painting. However, Chenega acknowledges that the Government has paid for 4,157 square feet under the Major Paint CLINs.

b. Chenega certified the request for equitable adjustment in accordance with DFAR 252.243-7002, and requested a contracting officer final determination. I have considered Chenega's request for equitable adjustment in accordance with the "Disputes" paragraph of FAR clause 52.212-4(d), which provides for the resolution of disputes in accordance with FAR clause 52.233-1.

*Global Power For America*

c. Chenega asserts that it should be paid under the Major Paint CLINs (0002AF and 1002AF) at the unit price rate of $0.26 per square foot for the painting square footage that it paints during COM, which exceeds 200 square feet. Chenega states in its 31 December 2002 letter that it "believes the requirements of the PWS (Performance Work Statement) are clear concerning painting as part of a COM and painting that is separately priced as major painting under CLIN 002AF." Specifically, Chenega further writes in the letter that "[i]n accordance with PWS paragraph 5.7.8, CM only provided for painting of 200 SF as a part of the normal maintenance effort performed during a COM which is substantiated by the price proposal CM provided to the Government detailing CM costs for this contract." Thus, Chenega argues that during COM, the painting square footage of a military family unit, which exceeds 200 square feet should be paid separately in accordance with the Major Paint CLIN.

d. A review of the relevant facts will assist in the resolution of this question:

(1.) During 1999, Civil Engineering Squadron personnel were performing the Military Family Housing Management and Maintenance services at Holloman Air Force Base. These services were also undergoing an A-76 study to determine if the services should be contracted out. Chenega requested that the in-house Military Family Housing Management and Maintenance services be directly converted to its company, which was and is a 51% Native American Owned company.

(2.) In August or September 1999, a draft copy of the PWS for the Management and Maintenance solicitation was mailed to Chenega. Then, in September 1999, representatives of Chenega visited Holloman Air Force Base and surveyed the Military Family Housing Management and Maintenance services that the in-house personnel of the Civil Engineering Squadron were accomplishing. During the September 1999 site visit and survey, a Government representative gave a representative of Chenega several copies of the Completed Work Order Listing, which contained approximately 12 months of the Family Housing Maintenance completed work orders. The listing of completed work orders showed the Housing Maintenance work orders issued for a 12-month time period. In addition, this listing contained the estimated and actual number of hours Civil Engineering employed personnel to complete the Housing Maintenance work orders. Both the COM paint and occupied residence painting were shown in the Completed Work Order Listing. In addition to receiving copies of the Completed Work Order Listing, in-house Civil Engineering personnel had in depth discussions about the housing maintenance work with Chenega representatives. Further, Chenega representatives were allowed to observe Civil Engineering personnel accomplish the family housing maintenance.

(3.) In January 2000, the Government issued the request for proposal for the Holloman Air Force Base Military Family Housing Management and Maintenance contract. Attached to the PWS were technical exhibits, one of which contained the floor plans, including dimensions, of the Family Housing units. The original request for proposal included CLINs 0001AB (Provide Unaccompanied Housing (UH) Management), and 0004AB (Change of

Occupancy Maintenance for UH). Unaccompanied Housing was Holloman Air Force Base's dormitory housing. Amendment No. 01 dated 28 January 2002 added CLIN 0005 to the basic year and option years. This CLIN provided for custodial services for Unaccompanied Housing (dormitories). However, CLINs 0001AB and 0005 were reserved (removed) from Section B of the contract in accordance with Amendment No. 2 dated 9 November 2000. Therefore, the final request for proposal did not include Change of Occupancy Maintenance and Custodial Services for the Unaccompanied Housing (dormitories). The management CLIN for Unaccompanied Housing remained a part of the contract. During negotiations between the Government and Chenega, the contract price was reduced as a result of the removal of the two Unaccompanied Housing CLINs.

(4.) On 1 April 2001, Holloman Air Force Base awarded a firm-fixed price Supplies and Services contract to Chenega to provide all supervision, personnel, equipment, transportation, tools, materials and other items and services necessary to perform Housing Management and Management services for the Military Family Housing (MFH) at Holloman AFB in accordance with the PWS for the period of 1 May 2001 through 30 September 2001 and four option years for the total contract price of $19,584,624.34 (Contract, at 1-2). Chenega and Government representatives signed the contract on 4 May 2001. The four option years are: (1) 1 Oct 01- 30 Sep 02; (2) 1 Oct 02-30 Sep 03; (3) 1 Oct 03-30 Sep 04; and 1 Oct 04-30 Sep 05.

(5.) The PWS provides, in part:

## SECTION C-2

DEFINITIONS

2.1.5. COM. The work accomplished to inspect, repair, maintain, clean, and service any of the military family housing units and their appurtenances, which are vacant.

2.1.23 **Major Elements of Work.** Non-routine work activities. Activities, which are paid with "activity duration" as a basis.

**2.1.23.1 Major Painting.** This includes interior or exterior painting of an area greater than 200 square feet per unit.

2.1.43 **Work Order/Job Order.** A written requirement to do work.

Exhibit 1

Page 3 of 9

# SECTION C-5

SPECIFIC TASKS

**5.7 Painting** Painting is normally accomplished in conjunction with COM. Painting includes surface preparation, pre-painting and finish painting of all surfaces to match existing areas. Generally, painting requires one (1) coat however, if one (1) coat of paint does not result in complete coverage, the contractor shall, at no additional cost to the government, apply additional coats of paint to obtain complete coverage.

. . .

**5.7.4. Occupied Residences.** The contractor shall paint only those areas that have been repaired due to other maintenance work.

. . .

**5.7.8 Measuring Square Footage to Compute Paint Cost.** Painting which exceeds 200 square feet will be paid separately in accordance with Section B. Painting which is less than 200 square feet will be considered a part of normal work required in conjunction with maintenance efforts. The area of walls and ceilings to be repaired and repainted will be the actual area to the nearest square foot for each room or area, including closets. Do not subtract square footage of windows. The door measurements shall be the width across the frame times the height of the frame measured to the nearest square foot. This measurement shall be subtracted when the doors are varnished. Cabinets that may require refinishing will be the actual width times the height measured to the nearest square foot. Each cabinet will be measured separately. For exterior cabinet finishing, multiply by one. For complete interior/exterior finishing, including shelves, multiply by two.

**5.8 CHANGE OF OCCUPANCY MAINTENANCE.**

**5.8.1. FH.** Upon turnover, the contractor shall be responsible for identifying and completing all repair/maintenance requirements. The contractor shall have three (3) working days to complete COM. Additional days will be given for major work requirements as specified in paragraph 5.8.1.1. After maintenance work has been completed and service requirements have been accomplished, the contractor shall ensure the unit is clean IAW TE 6, and ready for assignment. The contractor shall schedule the unit for inspection IAW para 5.2.4.

**5.8.1.1. Additional Time for Major Work Requirements.**

Exhibit 1

Page 4 of 9

. . .

**5.8.1.1.3 Major Painting-1.5 workdays**

. . .

**5.8.5. Major Work.** In the event that major work is encountered in the performance of any service call or work order, the labor hours required to perform that work shall be estimated using the latest version of Means Residential Maintenance and Repair Guide. The contractor and government shall meet to develop a mutually acceptable estimate based on the Guide. A labor hour reimbursement shall then be issued to the contractor in accordance with Section B.

(6.) On 2 July 2001, Chenega submitted invoice no. 3, for 24,418 square feet under the Major Paint CLIN 0002AF in the amount of $20,226.16. Chenega's invoiced square footage of 24,418 exceeded the square footage quantity under the Major Paint CLIN of 3,000 square feet for the basic contract year of 1 May 2001 to 30 September 2001. Therefore, on 22 May 2001 Chenega and the Government agreed to the issuance of bilateral Modification P00001, which modified the language in paragraphs 2.1.5 (COM), 2.1.23.1 (Major Painting), and 5.7.8 (Measuring of Square Footage to Compute Paint Cost) of the PWS. Further, bilateral Modification P00001 obligated Chenega to provide a full painting of six (6) housing units calculated at 3,000 square feet per unit. The parties agreed that these changes were effective from 22 May 2001 through 12 Jun 2001, and that the changes were at no additional cost to the Government. All other terms and conditions of the contract remained unchanged.

(7.) Chenega would not agree to change the language in paragraphs 2.1.5 (COM), 2.1.23.1 (Major Painting), and 5.7.8 (Measuring of Square Footage to Compute Paint Cost) from 12 June 2001 to 30 September 2005, the end of the fourth option period. Consequently, on 5 June 2001 Contracting Officer Vivian Fisher issued unilateral Modification P00002 for clarification purposes that changed the PWS language in paragraphs 2.1.5, 2.1.23.1, and 5.7.8. These paragraphs were changed as follows:

**2.1.5. COM.** The work accomplished to inspect, repair, maintain, paint, clean, and service any of the military family housing units and their appurtenances, which are vacant.

**2.1.23.1 Major Painting for Above and Beyond Painting.** This includes interior or exterior painting of an area greater than 200 square feet per unit other than the painting which occurs during COM.

**5.7.8 Measuring Square Footage to Compute Paint Cost Major Painting FOR ABOVE AND BEYOND PAINTING Major**

Exhibit 1
Page 5 of 9

painting, as defined in Paragraph 2.1.23.1 for above and beyond that accomplished during COM, will be paid separately in accordance with Section B. Painting which is less than 200 square feet will be considered a part of normal work required in conjunction with maintenance efforts. The area of walls and ceilings to be repaired and repainted will be the actual area to the nearest square foot for each room or area, including closets. Do not subtract square footage of windows. The door measurements shall be the width across the frame times the height of the frame measured to the nearest square foot. This measurement shall be subtracted when the doors are varnished. Cabinets that may require refinishing will be the actual width times the height measured to the nearest square foot. Each cabinet will be measured separately. For exterior cabinet finishing, multiply by one. For complete interior/exterior finishing, including shelves, multiply by two.

(8.) From 13 June 2001 through 31 July 2002, and from 1 September 2002 to 31 December 2002, the Government refused to pay the Major Painting CLIN quantities for which Chenega invoiced that were for the square footage of painting maintenance which exceeded 200 square feet quantity and which was accomplished during COM. The Government paid Chenega a unit price to accomplish all COM repair and maintenance in each vacant Family Housing unit.

(9.) Mr. Edward Burke was the Contracting Officer for the Chenega contract from approximately May 2002 to 1 November 2002. He signed bilateral Modification P00047 on 23 August 2002, which had an effective date of 1 August 2002. The purpose of this bilateral Modification was to adjust the cost of the "Major Paint" line items rate from $0.82833 to $0.26 as stated therein. There were no statements made within the bilateral modification that the reason for the reduction in the per square foot rate from $0.82833 to $0.26 was a settlement of the Major Paint dispute between Chenega and the Government. In addition, the contract price was not increased to pay Chenega for the total square footage it claimed. The contract price remained the same. Finally, Mr. Burke did not process modification P00047 through the Contract Review Committee of the Contracting Squadron as required.

(10.) On 1 November 2002, Mr. Edward Burke was replaced as the Contracting Officer on the Chenega contract.

(11.) In a letter dated 31 December 2002, Chenega requested an equitable adjustment in the amount of $308,634.81 for painting 1,602,765 square feet in conjunction with COM during the time period of May 2001 through October 2002. The Government made payments to Chenega under the Major Paint CLIN in September 2002.

(12.) On 4 February 2003, the Government requested Chenega respond to the following questions: (A) what was Chenega's understanding of CLINs 0002AF, 1002AF, 2002AF, 3002AF, and 4002AF for Major Paint; (B) what was Chenega's

Exhibit 1
Page 6 of 9

rationale for the 7 full time painters included in its proposal; (C) what approval documentation did Chenega have for the increase in square foot quantities in CLINs 0002AF and 1002AF from a total of 10,200 square feet to the 1,602,765 square feet; (D) what was Chenega's reasoning for not formally notifying the contracting officer of the ongoing discrepancy between what Chenega's monthly invoices reflected for additional Major Paint and the Government's refusal to approve these invoices; and (E) what were Chenega's reasoning and documentation for not notifying the contracting officer that CLINs 0002AF and 1002AF was drastically exceeded?

(13.) In a letter dated 28 February 2003, Chenega responded to the Government questions.

e. I have thoroughly reviewed Chenega's request for equitable adjustment for payment of painting maintenance in conjunction with COM at the unit price of $0.26 square feet as prescribed under the Major Paint CLINs 0002AF and 1002AF. In essence, Chenega asserts that when the painting maintenance square footage in a Family Housing unit exceeds 200 square feet and the painting maintenance is in conjunction with COM, the painting maintenance square footage that exceeds 200 square feet is to be paid at the square foot rate of the Major Paint CLIN. In addition, Chenega contends that it has completed 1,602,765 square feet of painting maintenance in conjunction with COM for which it has not been paid at the Major Paint square footage rate. Therefore, Chenega seeks an equitable adjustment in the amount of $308,634.81.

f. Based upon the above and below listed facts I deny your request for equitable adjustment.

(1.) During Chenega's site visit in September 1999, the Government provided work order documentation which established the estimated and actual hours that the in-house Civil Engineering personnel expended to accomplish COM painting and the painting of occupied residences. These work orders demonstrated that COM painting estimated and actual hours were much more than work order man-hours for occupied residences painting.

(2.) During this same site visit, Chenega representatives had in-depth discussions with in-house Civil Engineering personnel who advised Chenega on their methodology in accomplishing COM.

(3.) The housing units' floor plans were a technical exhibit to the request for proposal solicitation. These floor plans provided the dimensions of the Family Housing units.

(4.) I have reviewed Chenega's initial and revised proposal and attachments.

(5.) Chenega contends that the square footage of painting in a Family Housing Unit during COM in excess of 200 square feet should be separately priced as Major Painting under CLINs 0002AF and 1002AF at the square footage rate of $0.26 per

Exhibit 1

Page 7 of 9

square foot. Thus, Chenega argues that normal painting during COM is painting of 200 square feet or less. In support of its position Chenega cites PWS paragraphs 5.7 (Painting) and its sub-paragraph 5.7.8 (Measuring Square Footage to Compute Paint Cost). Reading the contract and PWS as a whole, paragraph 5.7 (Painting) and its sub-paragraphs apply primarily to occupied residences, and paragraph 5.7 (Painting) does not apply to the Change of Occupancy Maintenance (COM), paragraphs 5.8 and its sub-paragraphs. The COM paragraph 5.8 and its sub-paragraphs apply to vacant Family Housing units that required repair and maintenance before they can be occupied.

(6.) Paragraph 5.7.8 (Measuring Square Footage to Compute Paint Cost) of the PWS does not apply to the Change of Occupancy section, paragraph 5.8 and sub-paragraphs of the PWS, because it is within the painting section of the PWS, paragraph 5.7 and its sub-paragraphs, and is not referred to or listed under the Change of Occupancy Maintenance section of the PWS. However, paragraph 5.7.4 (Occupied Residences) is within the painting section of the PWS and it applies to the painting of occupied residences and this is the paragraph to which paragraph 5.7.8 applies. The definition of Change of Occupancy Maintenance is "[t]he work accomplished to inspect, repair, maintain, clean, and service any of the military family housing units and their appurtenances, which are vacant." Therefore, COM applies to vacant military family housing units and their appurtenance. COM does not apply to occupied residences. A description of the contractor's responsibilities and requirements during COM is set out in paragraph 5.8.1 of the PWS which states "[u]pon turnover, the contractor shall be responsible for identifying and completing all repair/maintenance requirements. The contractor shall have three (3) working days to complete COM. Additional days will be given for major work requirements as specified in paragraph 5.8.1.1. . . ." Painting maintenance accomplished in conjunction with COM during the three-day period is within the definition of "all repair/maintenance requirements". There is not a paragraph under the COM section of the PWS, paragraph 5.8 and its sub-paragraphs, that indicates that painting in excess of 200 square feet is to be priced separately. However, paragraph 5.8.1 does provide that additional days will be given for major work requirements. The procedure for payment in the event there is major work in conjunction with COM is prescribed in paragraph 5.8.5. In reviewing the files, I have found no evidence that Chenega used the procedure described in paragraph 5.8.5 for its calculation of the square footage in the request for equitable adjustment. It is noteworthy that under the Family Housing contract Chenega performs both the management and maintenance functions during COM. That means that Chenega representatives inspect the military family housing units and determine what painting maintenance is required, then Chenega representatives accomplishes the COM work. Finally, Chenega's review of the estimated quantity of 3,000 square feet for the Major Paint CLIN for the estimated 275 military family housing units for the base year should have caused a question based on its interpretation, that painting in excess of 200 square feet was to be paid under the Major Paint CLIN. The Major Paint CLIN applies primarily to the painting of occupied residences, and the calculation

Exhibit 1
Page 8 of 9

per square foot of $0.26 applies to painting accomplished in occupied residences as defined in paragraph 5.7.4 of the FWS.

g. AFI 32-6001, Family Housing Management was incorporated in the Statement of Work.

3. Additionally, it is my final decision that interior painting occurring during COM is not to be charged under the Major Paint CLIN. This is the final decision of the Contracting Officer. You may appeal this decision to the agency board of contract appeals. If you decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the agency board of contract appeals [Armed Services Board of Contract Appeals, Skyline Six, 5109 Leesburg Pike, Falls Church, VA 22041-3208] and provide a copy to the Contracting Officer from whose decision this appeal is taken. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by number. With regard to appeals to the agency board of contract appeals, you may, solely at your election, proceed under the board's small claim procedure for claims of $50,000 or less or its accelerated procedure for claims of $100,000 or less. Instead of appealing to the agency board of contract appeals, you may bring an action directly in the United States Court of Federal Claims (except as provided in the Contract Disputes Act of 1978, 41 U.S.C. § 603, regarding Maritime Contracts) within 12 months of the date you receive this decision.

Sally M. Walton
SALLY M. WALTON
Contracting Officer

Cc: Karen Felix/Holloman Chenega Management

Exhibit 1
Page 9 of 9